UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 1:25-CR-16-HAB-ALT |
| AUNG TWIN | |

## OPINION AND ORDER

Defendant, Aung Twin, pleaded guilty to possession of an unregistered firearm. Following Defendant's guilty plea, the probation office prepared and filed a draft presentence investigation report ("PSR") (ECF No. 27). In that report, the probation officer found Defendant's base offense level to be 20 under §2K2.1(a)(4)(B) because he was a prohibited person at the time the defendant committed the offense. (PSR ¶21). Specifically, the probation officer determined based on information contained in PSR ¶14 that Defendant was an unlawful user of a controlled substance, making him a prohibited person under 18 U.S.C. § 922(g)(3). Defendant objected to this finding arguing that the constitutionality of 18 U.S.C. §922(g)(3) is unsettled. (ECF No. 29). After receiving a response from the Government, the probation officer submitted a final PSR (ECF No. 31) along with an addendum (ECF No. 32) in which the officer concluded that the draft PSR correctly reflected the Defendant's offense level. The parties requested to submit briefing on the objection, which the Court has now received. (ECF Nos. 42, 43, 48). Because the Court finds that §922(g)(3) is constitutional as set forth in *United States v. Seiwert*, 152 F.4th 854 (7th Cir. 2025) and the Defendant's admissions support the base offense level assessed by the probation officer, the Court overrules the Defendant's objection.

## DISCUSSION

1. *Factual Background*

The undisputed relevant facts are as follows:

On December 9, 2024, officers with the Fort Wayne Police Department ("FWPD") conducted a traffic stop on a white Chevrolet Equinox Twin was driving. During the traffic stop, Det. McCurdy smelled the odor of burnt and raw marijuana coming from the vehicle. Twin and his front seat passenger were directed to step out of the vehicle and Det. McCurdy conducted a probable cause search of the vehicle. During that search, Det. Eastburn located a green leafy substance in a cigarillo package and a green leafy substance in a vape box. These tested positive for THC. Twin also had a small container with THC wax on his person.

On the rear driver's floorboard, Det. Eastburn located a black Ruger AR-556, .223/5.56 caliber rifle. The barrel of the rifle was approximately 6 inches in length and the overall length was 21 3/16 inches. The firearm was loaded with a magazine containing 30 rounds of .223 caliber ammunition, but did not have a round in the chamber.

Det. McCurdy advised Twin of his *Miranda* rights and Twin agreed to speak to law enforcement. The interview was not recorded but Twin's statements were documented in Det. McCurdy's report ("McCurdy Report," ECF No. 43-1) along with the detective's observations that evening. During the interview, Twin admitted to owning the rifle in the rear of the car, admitted that he did not have a tax stamp (which is required for a long rifle), and that he purchased the gun in a private transaction. Det. Foote also asked Twin "how long he had been smoking weed" to which Twin allegedly responded "not that long." ("Foote Report," ECF No. 43-2). The Government also provided the Court with body camera footage from the arrest in which there is at least one exchange between an officer outside the body camera view and Twin in which Twin

is asked if he is selling weed or "just using it." Twin responds, "I just smoke sir." (Gov't Ex. 2 at 1:02:16). Twin also told the officer he smokes every day. (*Id.* at 1:02:22-1:02:32).

Det. McCurdy placed Twin under arrest for marijuana possession and he was transported to the Allen County Jail. At the jail, Twin underwent the intake pre-screening process and answered "yes" to the question of whether he was under the influence of alcohol or drugs. "Marijuana" was written on the intake form next to the question "what type." (ECF No. 43-3; see also Foote Report).

In addition to these facts, the PSR indicates that during the Defendant's interview, he admitted to daily marijuana use at the time of his arrest. (PSR ¶14). The PSR also discloses the Defendant's history of sustained marijuana use. (PSR ¶61)

2. Analysis

Twin objects to a base offense level of 20, as proposed in the PSR and supported by the Government, on the grounds that he was not a prohibited person within the meaning of the law on the day of the offense. The Sentencing Guidelines provide for a base offense level of 20 for a defendant: (1) whose offense involved a firearm described in 26 U.S.C. § 5845(a); and (2) who was a "prohibited person" at the time he committed the offense. U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I). A "prohibited person" includes "any person described in 18 U.S.C. § 922(g) or § 922(n)." *Id.* § 2K2.1 app. n.3. Section 922(g)(3) makes it unlawful for any person "who is an unlawful user of or addicted to any controlled substance" to possess a firearm. Marijuana is a Schedule I controlled substance. 21 U.S.C. §§ 802(6), 812(c)(10). An "unlawful user," as used in section 922(g)(3), is "one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician." *United States v. Cook*, 970 F.3d 866, 874 (2020) (citing *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam)).

3

Paragraph 14 of the PSR explains that Twin is a prohibited person because on the day of the offense, he admitted he was under the influence of marijuana and he possessed marijuana on his person and in his vehicle. Twin also admitted to his probation officer that prior to his arrest he was a daily marijuana user. (PSR ¶14).

Twin initially argued that increasing his base offense level because of his unlawful user status is unconstitutional after *New York Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). (ECF No. 38 at 2). In *Bruen*, the Supreme Court laid out a two-prong test to determine whether a regulation violated the Second Amendment: (1) a court determines whether the plain text of the Second Amendment covers the conduct at issue, *id.* at 2129, 2134–35; and (2), if the Second Amendment does cover the conduct, a court must determine whether the Government has established the regulation is consistent with the historical tradition of firearms regulation in the United States. *id.* at 2129–30. This Second Prong requires the use of "historical analogies," where the Court compares historical firearm regulations with the modern one and determines whether the two are "relevantly similar." *Id.*

Most recently, however, in *United States v. Seiwert*, 152 F.4th 854 (7th Cir. 2025), the Seventh Circuit put to rest the argument that § 922(g)(3) is unconstitutional. Thus, to the extent that Twin's objection is based on the unconstitutionality of § 922(g)(3), that argument is foreclosed by *Seiwert*.[1]

Twin also argues that the Government should have to prove that Twin was aware of his prohibited person status, i.e., that he was aware of his status as an unlawful user of marijuana. Said slightly differently, Twin argues that he does not qualify as a "prohibited person" because

---

[1] Twin appears to abandon this argument in his reply brief noting that "Twin does not intend to argue the constitutionality of 18 U.S.C. § 922(g)(3) because that is better left for a defendant charged with a violation of that statute." However, out of an abundance of caution the Court acknowledges the holding in *Seiwert* to foreclose the constitutional question initially posed by Twin.

4

the Government has not, and cannot, prove that he knew he was an "unlawful user" of a controlled substance under § 922(g)(3). In support, Twin relies on *Rehaif v. United States*, 588 U.S. 225 (2019) and *Cook*, 970 F.3d at 883–84. *Rehaif* establishes that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 588 U.S. at 237. Applying *Rehaif*, the court in *Cook* required proof of the defendant's knowledge of his status as an "unlawful user" to support a conviction under § 922(g)(3). 970 F.3d at 874.

In *United States v. Bowers*, 2025 WL 1098802, at *2 (N.D. Ind. Apr. 14, 2025) (J. Brisco), another division of this Court refused to require the Government to prove that the defendant knew he was an unlawful user of a controlled substance to qualify him as a "prohibited person" for sentencing purposes. In addressing the identical argument Twin raises here, the Court wrote:

> Neither *Rehaif* nor *Cook* discusses the knowledge requirement vis-à-vis the prohibited-person enhancement in the Sentencing Guidelines. In fact, sentencing decisions by district courts across the country have been affirmed based on factual findings that the defendant was an admitted drug user at the time of the convicted offense without any mention that the defendant knew his drug use was unlawful. *See, e.g.*, *United States v. Wilson*, 979 F.3d 889 (11th Cir. 2020); *United States v. Glinn*, 863 F.3d 985 (8th Cir. 2017); *United States v. Marceau*, 554 F.3d 24 (1st Cir. 2009); *United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008); *United States v. McCowan*, 469 F.3d 386 (5th Cir. 2006); *United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006). Mr. Bowers has presented no authority to warrant an expansion of the holdings of *Rehaif* and *Cook* in this case either. As a result, the Government need not prove that Mr. Bowers knew he was an "unlawful user" of a controlled substance under Section 922(g)(3) for him to qualify as a "prohibited person" for sentencing purposes. Mr. Bowers's admission to the investigators on March 5, 2024, establishes that he was regularly using marijuana in January 2024 at the same time he possessed the machinegun that led to his instant conviction. This alone qualifies Mr. Bowers as an "unlawful user" under 18 U.S.C. § 922(g)(3), which in turn warrants application of the "prohibited person" enhancement to the calculation of his base offense level.

*Id.* at *2. Like in *Bowers,* Twin has pointed the Court to no authority requiring a defendant's

knowledge of his unlawful user status for sentencing purposes. As a result, the Court adopts the analysis and conclusion in *Bowers* and finds that it flows equally to this case. The Government was not required to prove Twin's knowledge of his unlawful user status to qualify him as a "prohibited person" for purposes of the base offense level enhancement.

 Lastly, and most troubling from this Court's perspective, Twin takes issue with the use of his admissions to his probation officer in the preparation of the PSR to enhance his guidelines range. As set out above, the final sentence of paragraph 14 of the PSR reflects "during his interview for this presentence report, the defendant admitted that prior to his arrest he was using marijuana daily." In addition, paragraph 61 indicates that Twin told probation he began smoking marijuana when he was 16 years old. That paragraph further reflects Twin's acknowledgement that his marijuana use continuously increased until he was smoking daily around the age of 17 or 18. Twin also told the probation officer that "he had some clean time while he was incarcerated; however, he returned to regular use upon his release." (*Id.*). Twin admitted using marijuana on the date of his arrest. However, his self-reported assessment TCUDS score showed only a mild substance abuse disorder.

 Twin makes both a process and a policy argument to encourage the Court to disregard Twin's statements to his probation officer. First, he objects to the process involved in the collection of PSR information. He argues that the probation officer advised him at the outset of his interview that he would not be asked questions about his offense. He argues that he was advised to provide truthful answers to substance abuse questions. Twin argues that despite reassurance from probation that information would not be used against him, probation is now using the very information he provided to increase his offense level. He believes this amounts to equitable estoppel because it, "changed his position for the worse." *Heckler v. Cmty. Health Servs*

6

*of Crawford Cnty., Inc.,* 467 U.S. 51, 59 (1976). Second, he asks the Court to exercise its supervisory authority over probation to decline to impose two points for Twin's alleged status as a prohibited person.

The *Bowers* court was faced with identical arguments as to equitable estoppel as well as the policy arguments raised here. Like Twin has done, Bowers argued that if he had known that his marijuana use would be used against him, he would not have been candid about his use to the probation officer. He argued that 18 U.S.C. §3153(c)(1), which limits use of information obtained in the course of performing pretrial services functions, should be extended to protect information gathered on the Court's behalf by the probation officer in preparation for sentencing. In response to Bowers' arguments the Court wrote:

> Despite Mr. Bowers's concerns, however, the probation officer has no authority to determine the facts and fashion an appropriate sentence, including a guidelines calculation; only the judge can do that. *See Jackson*, 886 F.2d at 844. And Mr. Bowers's right against self-incrimination, protected by Section 3153, is not implicated by the probation officer's presentence substance abuse questions or the answers to those questions in October 2024. Furthermore, the plain language of Section 3153 limits its application to pretrial information. Congress could have protected post-conviction information similarly but did not. Mr. Bowers presents no evidence or legal authority to establish Congressional intent for extending the protections of Section 3153 to post-conviction, presentence information like that he provided to the probation officer in October 2024.
> 
> Additionally, 18 U.S.C. § 3661 expressly authorizes the Court to consider all information it receives "concerning the background, character, and conduct of a person convicted of an offense ... for the purpose of imposing an appropriate sentence." No limitations on the scope of relevant information are placed on the Court. *Id.*; *see also United States v. Rosengard*, 949 F.2d 905, 909 (7th Cir. 1991) ("When a defendant tells all in order to benefit from acceptance of responsibility, he runs the risk of incurring further punishment for what he reveals."). The law therefore does not prohibit the probation officer from sharing information from the presentence interview in the PSR. And Mr. Bowers points to no authority preventing the Court from considering his October 2024 statements about his marijuana use to the probation officer.
> 
> Mr. Bowers's argument for equitable estoppel fares no better. He asserts that he provided truthful answers about his marijuana use to the probation officer because the probation officer told him no questions would be asked about his offense, and his truthful answers changed his guidelines range for the worse. A

7

> party must, at a minimum, demonstrate the traditional elements of an estoppel when asserting such against the Government. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). The record includes no evidence that the probation officer told Mr. Bowers that his answers to any questions in the presentence interview would not negatively affect the guidelines calculation proposed by probation or adopted by this Court. There was thus no misrepresentation of fact from which to establish estoppel.

*Bowers*, 2025 WL 1098802, at *3.

There are no material distinguishing factors between Twin's situation and that of Bowers – either factually or legally. Both made factual disclosures to their probation officers as part of the integral presentence report process. That process is intended to assist the sentencing judge in learning about a defendant and Congress allows the Court to consider the "background, character, and conduct" of the defendant for the purpose of crafting a reasonable sentence using the § 3553(a) factors. Twin points to no legal basis preventing the Court from considering his statements to the probation officer or using the information obtained in the PSR to determine his guidelines sentence. Likewise, there is no misrepresentation of fact that is evident in this record to preclude the use of statements made during the presentence reporting process from affecting, positively or negatively, the advisory guidelines range.

Even so, Twin argues that the record is insufficient to show by a preponderance of the evidence that he was an "unlawful user" as that term is used in § 922(g)(3). As noted *supra*, an "unlawful user" is "one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician." Twin admitted that at the time of the offense he was a daily marijuana user. When he was arrested, he admitted being under the influence of marijuana and marijuana was found in the vehicle. The body camera footage contains admissions that further doom his argument that he was not an "unlawful user." Even setting aside the probation officer's

8

reliance on Twin's admission of daily use in the presentence report,[2] the facts from the offense and his statements made at that time support, by a preponderance, the conclusion that Twin was an "unlawful user" of a controlled substance at the time of the offense. Twin's objections to paragraphs 14 & 21 of the PSR are, therefore, OVERRULED.

## CONCLUSION

Based on the above, the Defendant's objections to the PSR (ECF No. 29) are OVERRULED. Sentencing will be set by separate entry.

**SO ORDERED** this 25th day of February 2026.

        s/Holly A. Brady
        CHIEF JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT

---

[2] The Court is hesitant to use Twin's admissions to the probation officer in preparation of the presentence report to enhance the Defendant's offense level out of concern that it would generally discourage defendants from being truthful and honest during the presentence report process.